UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ERIC JANSEN JONES, #118937, | ) | Civil Action No.: 4:15-cv-3273-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| J. McREE, MD, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendant was deliberately indifferent to his serious medical needs.  He also alleges that Defendant's actions violate the Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.  Presently before the court is Defendant's Motion for Summary Judgment (Document # 36).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in dismissal of his Complaint.  Plaintiff filed a Response (Document # 40), to which Defendant filed a Reply (Document # 41).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This report and recommendation is entered for review by the district judge.

## II.     FACTS

In his complaint, Plaintiff alleges that he has been in SCDC since June 1983 and is currently housed in the McCormick Correctional Institution.  During his incarceration, he has had a stroke and has been diagnosed with chronic arthritis and bipolar disease.  In January 2014, he started reporting

to sick call two or three time a week for "itching, red bumps, red burning skin and skin discoloration." He went to sick call for approximately four months before he was allowed to see a doctor. Defendant Dr. McRee ordered a few methods of treatment, including medications and creams, but none of them were helpful, and he is charged $5 each time he goes to the medical office and $5 for each medication. Because the medications did not work, he asked to see a Dermatologist. Another four months passed before he was transported on August 13, 2014, to MUSC and seen by two Dermatologists, who diagnosed a chronic skin disease that required a lengthy treatment program. The doctors told him the disease is contagious, and if not treated properly, it could turn into cancer. They said it could be scabies, but further tests were needed to confirm it. Plaintiff was refused these tests, and he continued to request outside treatment, but his requests were ignored. Defendant Dr. McRee told Plaintiff he did not know what else to do. Plaintiff wrote several Requests to Staff and filed several grievances. He did not receive a response from Defendant Dr. McRee, but a nurse responded saying Defendant Dr. McRee had nothing left to offer and he should just continue to visit to sick call. Plaintiff continues to write Requests to Staff to Defendant Dr. McRee, but he does not respond. Other staff members have ignored his complaints that he is in pain and is having serious psychological problems because of the denial of medical care by Defendant Dr. McRee. Although he was given the same cream on June 5, 2015, it does not provide any relief and 70% of his body is covered with the disease. Compl. pp. 3-6.

Dr. McRee provides a detailed affidavit of the treatment Plaintiff received for his skin condition along with Plaintiff's medical records. Plaintiff first visited sick call on February 21, 2014, complaining of a rash all over his body that itched. A Nurse Practitioner examined Plaintiff and noted the he had a red rash all over his arms, legs, abdomen, and face. The Nurse Practitioner thought that Plaintiff had a localized reaction to a sting or bite, prescribed Benadryl, Claritin, and

a HC cream and told Plaintiff to return as needed.  McRee Aff. p.3; Pl. Med. Records Encounter #

506 (Ex. to Def. Motion).

Plaintiff returned to sick call on March 4, 2014, with continued complaints of a rash over his

entire body that was not getting better.  The rash appeared red and patchy with some brownish

darkened areas.  The nurse instructed Plaintiff to try not to scratch and to take luke-warm showers

instead of hot.  Dr. McRee reviewed the encounter and ordered prednisone and blood work and to

continue with the Claritin.  Plaintiff received the steroid injection on March 12, 2014.  Plaintiff was

a "no show" for sick call on March 17 and 19, 2014.  McRee Aff. p.3; Pl. Med. Records Encounter

# 508-11.

On March 25, 2014, Plaintiff returned to sick call for the same complaints.  The steroid

injection did not work.  A nurse noted that the rash had circular bumps in some spots with no

drainage.  Plaintiff had rubbed raw some parts of his body, causing the areas to be swollen with

welts.  Dr. McRee ordered hydrocortisone and Benadryl and that Plaintiff be seen by him in the

doctor's clinic.  McRee Aff. pp.3-4; Pl. Med. Records Encounter # 514.

Plaintiff was seen by Dr. McRee on March 27, 2014.  He increased his pain medication and

ordered additional blood work and urinalysis.  He also ordered diphenhydramine to help relieve the

itching.  McRee Aff. p.4; Pl. Med. Records Encounter # 515, 517.

On April 4, 2014, Plaintiff presented to sick call complaining that his rash was getting worse

and burning and itching.  Dr. McRee reviewed Plaintiff's records and noted that his medications

were not working and his labs were normal.  He ordered two new medications, Vistaril and

Singulair, to try to treat the rash.  McRee Aff. p.4; Pl. Med. Records Encounter # 519.

Plaintiff returned to sick call on May 14, 2014, and Dr. McRee ordered two new medications,

Robaxin and Triamcinolone cream.  Plaintiff reported on May 16, 2014, that the cream was not

working so Dr. McRee resuemed the hydrocortisone mixed with antibiotic ointment. Plaintiff's medications were renewed on June 6, (with the addition of Benadryl), June 30, July 4, July 7, and July 29, 2014. McRee Aff. pp. 4-5; Pl. Med. Records Encounter # 527-539.

On August 13, 2014, Plaintiff saw a dermatologist at MUSC. The doctor diagnosed chronic dermatitis, recommended Triamcinolone, Cerave, or Aquaphor cream and Hydroxyzine and discontinued Benadryl. On August 15, 2014, Plaintiff visited sick call stating that the dermatologist said he had poor circulation in his leges that needed to be treated. Dr. McRee reviewed the notes from the MUSC dermatologist and did not see poor circulation mentioned. McRee Aff. p.5; Pl. Med. Records Encounter # 542-44.

Plaintiff saw Dr. McRee in the doctor's clinic on August 22, 2014. Dr. McRee noted some improvement with the new creams. He ordered lab work and hydroxyzine. McRee Aff. p.5; Pl. Med. Records Encounter # 548.

Plaintiff visited sick call on September 11, 2014, complaining of continued itching. He said the itching was gone on his arms, but he was still having problems on his neck and down his body. A nurse reported that Plaintiff had small bumps over his skin where he was itching, and the skin appeared splotchy. Dr. McRee determined that Plaintiff had adequate medications for itching and he could not improve on the problem with other medications. McRee Aff. p.5; Pl. Med. Records Encounter # 552.

Plaintiff returned to sick call on January 27, 2015, complaining that the itching was driving him crazy and he could not sleep at night. Dr. McRee did not have anything new to offer Plaintiff regarding the itching. McRee Aff. p.5; Pl. Med. Records Encounter # 556.

Plaintiff returned to sick call on May 14, 2015, with continued complaints about itching and red bumps on his arm and both legs. He said that something else needed to be done about his

condition, and he wanted to see a dermatologist again.  A nurse noted that Plaintiff had a small localized area of red raised bumps to the left forearm and both upper thighs.  A nurse practitioner renewed his medications.  McRee Aff. p.6; Pl. Med. Records Encounter # 565.

A nurse practitioner met with Plaintiff on June 17, 2015, and Plaintiff requested to try a new drug called Tricaim, but that medication was not an option at SCDC.  Dr. McRee renewed Plaintiff's Aquaphor cream and Hydroxyzine and added Cymbalta for pain.  McRee Aff. p.6; Pl. Med. Records Encounter # 566-73.

Plaintiff came to sick call on October 27, 2015, to request a dermatology appointment.  His legs were hurting and draining fluid.  A nurse noted that Plaintiff's legs were red and swollen and had small pinpoint open areas that drained clear fluid.  Dr. McRee denied the dermatology referral and scheduled an appointment for Plaintiff to be seen by him.  On October 31, 2015, Dr. McRee discontinued Plaintiff's Vistaril because of poor compliance.  McRee Aff. p.6; Pl. Med. Records Encounter # 575-76.

Dr. McRee saw Plaintiff again on December 4, 2015, and noted that the medications recommended by the dermatologist were not helpful.  Plaintiff complained of bone pain in his shins, itching keeping him up at night and leg pain when he walked long distances.  Because Plaintiff's rash and his bone pain could have been related, Dr. McRee made another referral to a dermatologist.  He added Penicillin and Perlactin for itching.  McRee Aff. p.6; Pl. Med. Records Encounter # 578.

On February 17, 2016, Plaintiff saw the MUSC dermatologist, who diagnosed atopic dermatitis, which is a chronic condition with a waxing and waning course that often flares up in the winter. The dermatologist recommended Triamcinolone ointment, hydrocortisone cream, Aquaphor, and limited bathing, without antibacterial soap, all of which Dr. McRee ordered, and all of which Plaintiff had used in the past.  The dermatologist also ordered a follow up appointment in four

months and, if Plaintiff's condition had not improved, would consider phototherapy with NBUVB twice weekly.  McRee Aff. p.7; Pl. Med. Records Encounter # 583.[1]

Dr. McRee averred that Plaintiff had not experienced any life threatening medical problems regarding his dermatitis and has not required any urgent or emergent medical treatment.  He averred that Plaintiff does not have scabies or skin cancer, and his condition is not contagious.  He also averred that, pursuant to his review of the medical records, Plaintiff has not had any psychological problems arising from the treatment of his skin condition.  He also averred that he was not responsible for the SCDC policy requiring five dollars for medical visits and medications.  McRee Aff. p.7.

III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla,

---

[1]Plaintiff asserts in his Response that he saw the dermatologist at MUSC again on June 9, 2016, who told him that he had eczema that he would have for the rest of his life because it was not properly treated in the beginning.  He has not produced any medical records in support.

upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light

most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).

However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory

allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-

75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof

that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th

Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere

allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present

evidence supporting his or her position by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v.

Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir.

1993); Local Rules 7.04, 7.05, D.S.C.

IV.    DISCUSSION

A.    Deliberate Indifference to Serious Medical Needs

Plaintiff argues that Defendant Dr. McRee was deliberately indifferent to his serious medical

needs and raises his claim pursuant to 42 U.S.C. § 1983.  Section 1983 "'is not itself a source of

substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"

Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v.

McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983

allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

As an initial matter, to the extent Plaintiff brings this claim against Dr. McRee in his official capacity, the claim fails. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 70.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the

Eleventh Amendment immunity.  Id.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendant was an employee of the SCDC at the time of the allegations in the complaint. Thus, he is entitled to Eleventh Amendment immunity from monetary damages in his official capacity.

Defendant can be liable for damages in his individual capacity if Plaintiff can show that he violated his constitutional rights.  Plaintiff alleges that Dr. McRee was deliberately indifferent to his serious medical needs.  To state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). In the case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id. at 103–105 (footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> ... a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 107.  There, the court noted that treatment "must be so grossly incompetent, inadequate or

excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted),

... nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Miltier

v. Beorn, 896 F.2d 848, 841 (4th Cir.1990). Unless medical needs were serious or life threatening,

and the Defendant was deliberately and intentionally indifferent to those needs of which he was

aware at the time, the plaintiff may not prevail.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970,

128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

As set forth above, Plaintiff has been treated for his skin condition since February 21, 2014.

Dr. McRee reviewed Plaintiff's medicals records after his second visit to sick call, on March 4, 2014,

and began prescribing various medications in an attempt to treat his rash.  He also ordered

bloodwork on two occasions and a urinalysis, which were all normal.

The records reveal that Dr. McRee approved a consult with a dermatologist on April 11,

2014, with instructions to get an appointment sooner rather than later.  Pl. Medical Records

Encounter # 521.  However, a medical tech who attempted to schedule the appointment was told by

the dermatology clinic that all consults for new patients were on hold until the doctor had slots

available to see SCDC patients.  The medical tech was told to call back in one to two weeks.  Pl.

Medical Records Encounter # 522.  On May 16, 2014, the medical tech was able to secure an

appointment for Plaintiff at the dermatology clinic for August 13, 2014. Pl. Medical Records Encounter # 530. Dr. McRee continued to treat Plaintiff while he awaited his appointment at the dermatology clinic. Once he was seen by the dermatologist, Dr. McRee ordered the medications recommended. At times Plaintiff reported some relief from the medications. Other times, he reported they were not helping. Dr. McRee continued to treat Plaintiff and to try various options to treat the rash.

Plaintiff requested to see either Dr. McRee or a dermatologist on May 14, 2015. In August of 2015, Plaintiff reported on more than one occasion that his skin condition was improving with the medications he was using. However, he again requested to see a dermatologist on October 27, 2015. Dr. McRee initially denied the request to see the dermatologist. When Dr. McRee saw Plaintiff on December 5, 2015, he approved the request. On December 8, 2015, the medical tech was able to secure an appointment with the dermatologist for February 17, 2016. Pl. Medical Records Encounter # 581. Following Plaintiff's visit with the dermatologist, Dr. McRee again ordered the medications recommended by the dermatologist, all of which Plaintiff had taken in the past.

The medical records reveal that Plaintiff was routinely seen and treated for his skin condition. Dr. McRee prescribed various medications and combinations of medications, ordered lab work in an attempt to determine the cause of the skin condition, and referred Plaintiff to an outside dermatologist twice in an effort to treat the condition. After each visit with the dermatologist, Dr. McRee prescribed the medications recommended.

In sum, the medical records reveal no denial of treatment by Dr. McRee. He continuously treated Plaintiff's skin condition. The fact that the Plaintiff disagrees with the treatment he received from Dr. McRee does not make this actionable under § 1983. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977). Mere

disagreement between the prisoner and prison officials regarding the proper treatment required does not constitute deliberate indifference.[2] The Constitution requires only that the prisoner receive adequate medical care; he is not guaranteed the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988).   There is no evidence presented that Dr. McRee "completely fail[ed] to consider [Plaintiff's] complaints or . . . act[ed] intentionally to delay or deny [Plaintiff] access to adequate medical care." Bridges v. Keller, 519 Fed. App'x 786, 787 (2013).  Therefore, Plaintiff fails to present sufficient evidence to create a genuine dispute of fact on his § 1983 claim, and summary judgment is appropriate.

**B.    ADA**

Plaintiff also alleges that "Defendants violated the 'Public Entity' provisions of Title II of the Americans with Disabilities Act." Compl. p. 10.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The term "public entity," as defined by the statute, does not include individual persons. See 42 U.S.C. § 12131(1). Therefore, Plaintiff cannot bring or maintain a suit against Dr. McRee in his personal capacity under Title II of the ADA. See Pathways Psychosocial v. Town of Leonardtown, MD, 133 F.Supp.2d 772, 780 (D.Md.2001).

Even if Plaintiff alleges his ADA claim against Dr. McRee in his official capacity[3], the claim

---

[2]It is noted that his second visit with the dermatologist, which Plaintiff complains he was denied for a period of time, did not result in any new treatment, but included medications Dr. McRee had already prescribed.

[3]The ADA creates a limited exception to state sovereign immunity. A disabled inmate may sue a state or state institution only for ADA violations which also violate the Fourteenth Amendment. United States v. Georgia, 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). Since the relevant provisions of the Eighth Amendment are made applicable to the states

fails. A plaintiff seeking relief under Title II of the ADA must present sufficient evidence to establish

that 1) he has a disability, 2) he is otherwise qualified to receive the benefits of the public services,

programs, or activities, and 3) he was denied the benefits of such services, programs, or activities,

on the basis of his disability. See Constantine v. Rectors & Visitors of George Mason Univ., 411

F.3d 474, 498 (4th Cir.2005); Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999). Plaintiff does not

allege that he was disabled or that he was denied any services, programs, or activities because of his

disability. The allegations in Plaintiff's complaint are not sufficient to state a claim under Title II of

the ADA, much less create an issue of fact for trial. Therefore, summary judgment is appropriate

on Plaintiff's ADA claim as well.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary

Judgment (Document # 36) be granted and this case be dismissed in its entirety.


                                             s/Thomas E. Rogers, III
                                             Thomas E. Rogers, III
                                             United States Magistrate Judge

August 11, 2016
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

by the Fourteenth Amendment, a plaintiff may state an ADA claim against a defendant in his
official capacity if he has alleged that his Eighth Amendment rights were violated. Id. at 157-59;
see also Blackburn v. South Carolina, C/A No.9:06-2011-PMD-BM, 2009 WL 632542, *20-21
(D.S.C. March 10, 2009); Spencer v. Earley, 278 Fed. Appx. 254, 257-59 (4th Cir.2008); Chase
v. Baskerville, 508 F.Supp.2d 492, 501-07 (E.D.Va.2007).